## SMITH v. SMITH.

A debt represented by a note which was made void because altered in a material part, was also secured by a mortgage which recited the note. *Held*, that the mortgage was not avoided, but was a valid security and could be enforced. *Plyler* v. *Elliott*, 19 *S. C.*, 264, approved and followed.

Before FRASER, J., Greenville, April, 1887.

The note of Spillars is set forth in the opinion.  So much of the mortgage as recited the debt was as follows :

"Whereas I, the said William C. Yeargin, in and by one note, certain bond or obligation, bearing date the 23rd day of December, A. D. 1882, stand firmly held and bound unto A. Spillars, of said county and State aforesaid, in the penal sum of three hundred dollars, conditioned for the payment of the full and just sum of three hundred dollars of same date herewith, with interest from this date thereof annually, as in and by the said bond and condition thereof, reference being thereunto had, will more fully appear.

"Now, know all men that I, the said Wm. C. Yeargin, in consideration of the said debt and sum of money aforesaid, and for the better securing the payment thereof to the said A. Spillars according the condition of the said bond, and also in consideration," &c.

Other matters are stated in the opinion of this court.

*Messrs. Westmoreland & Dorroh*, for appellant.

*Mr. A. Blythe*, contra.

July 12, 1887.  The opinion of the court was delivered by

MR. JUSTICE McGOWAN.  Baylis L. Smith, as the administrator of William C. Yeargin, deceased, instituted this action for the purpose of having lands of the intestate sold in aid of the personalty in paying debts and for partition.  The heirs at law of the intestate were made parties, and also one Alexander Spillars, who held a mortgage of the lands of the intestate.  An order was passed calling in the creditors to present and prove their demands before the master, S. J. Douthit, Esq.  Among the creditors who presented demands was the said Alexander Spillars, who presented and proved a note as follows :

"$300.   One day after date I promise to pay A. Spillars or order three hundred dollars for value received, *with ten per cent. per annum.*[1]

---

[1] The words in italics were erased when the note was produced at the trial.—REPORTER.

"This 23rd day of December, 1882. (Signed) W. C. Yeargin, [L.S.]"

Endorsed: "October 27, 1883. Received interest in full on the within to December 23rd, 1884. December 1, 1884. Received interest in full on the within to December 23rd, 1885."

He also proved a mortgage of 140 acres of land, executed to him by the said intestate, Yeargin, to secure the same debt. It was admitted that the words, "*with ten per cent. per annum*" were put in the note by the directions of Mr. Spillars after the death of the intestate, without the knowledge or consent of the plaintiff (his administrator), and were erased after the suit was commenced, or crossed out by said Spillars. The defendant (Spillars) offered to prove by parol testimony that the agreement between him and the intestate, at the time and before the execution of the note, was that the intestate was to pay interest at the rate of ten per cent. per annum, and that it was simply an omission on the part of the party who drew the note, that it was not drawn in that way; and that neither discovered that it was not so drawn until the first interest was paid thereon. The testimony was excluded on the ground that parol testimony cannot be introduced to alter or vary the written instrument. The master, therefore, held that the words as to the interest added to the note by the direction of Spillars, rendered it void.

His report then proceeds: "The next question, then, to be considered is, the note being void, can the mortgage be established as a valid and subsisting claim independent of the note? Both parties cite and rely upon the same authority (*Plyler* v. *Elliott*, 19 *S. C.*), the plaintiff contending that the difference in this case from that is, that the mortgage there does not refer expressly to the note, while here it does, and therefore the mortgage cannot be separated from the note so as to stand as a valid claim of itself, as it would be impossible to establish the mortgage without referring to the note. After a careful examination of the case referred to, the master is unable to distinguish any material difference between it and the one under consideration, for it seems to him that the doctrine there intended to be enunciated is, that both the bond and mortgage are evidences and securities for the same debt, and although one may be rendered void, it does not

take away the right to enforce the other.    The mortgage in question certainly furnishes enough evidence independent of the note to establish the amount due thereon, for it recites that the condition of the note is 'for the payment of the full and just sum of $300, of same date herewith,' &c.    The master, therefore, finds that the mortgage in itself is a valid claim against the estate of the intestate herein," &c.

Upon exceptions to this report the cause came on to be heard by Judge Fraser, who confirmed the report and made it the judgment of the court.    From this order the plaintiff (administrator) appeals to this court upon the grounds: "1. Because his honor erred in adjudging that the mortgage in question was a valid subsisting security, irrespective of the note it was given to secure. 2. Because his honor erred in adjudging that said mortgage furnished evidence sufficient, independent of said note, to establish the amount due thereon.    3. Because his honor erred in not adjudging that said note was the original contract and primary evidence of the debt, as shown by reference thereto in the conveying part of said mortgage, and that the invalidation of said note destroyed the validity of said mortgage."

We agree with the master and Circuit Judge that this case is concluded by that of *Plyler* v. *Elliott*, 19 *S. C.*, 264.    We do not deem it necessary to add anything to what is said in that case, or to reopen the argument; but simply to make one or two observations.    It is certainly a mistake to consider the note as the debt itself, for all agree that even after the note is barred, a mortgage given to secure the same debt may be enforced.    *Nichols* v. *Briggs*, 18 *S. C.*, 484.    But there seems to be an idea that there must of necessity be a difference when the note is made void by an alteration—that in such case, the act being fraudulent reaches beyond the security altered, and as a sort of penalty avoids the debt itself and all other securities.    The rule as to the alteration of written securities, as announced by Mr. Greenleaf, is that, "written instruments which are altered in the legal sense of that term, are thereby made void"—that is, the instrument altered is made void—nothing is said as to the effect on the debt itself or other securities.

*Gillett* v. *Powell, Speer's Eq.*, 144, is our leading case on the

subject, and it is suggested that, though a case of alteration, the alteration there was "innocent," and therefore the punishment of avoiding the debt was not applied. I do not clearly see how it can be assumed that the alteration in that case was "innocent." In the report of the case Chancellor Harper says: "At the sale by the administrator *de bonis non*, James Higginbotham became the purchaser of slaves to the amount of $2,337.75. He gave his bond for the amount, and on the same day executed a mortgage of the slaves, conditioned to be void on the payment of $2,-337.75. * * * On the production of the bond it was found to have been altered, so as to be conditioned for double the amount that was actually intended to be secured. The commissioner decided correctly that the bond was void for the alteration." And in delivering the judgment of the then Appeal Court in Equity, Chancellor Dunkin said: "The court has no disposition to call in question the decision of *Mills* v. *Starr*, 2 *Bail.*, 359. If Powell had no demand at law but on the bond, and he had lost that by his own fault or folly in altering the condition, he would be entitled to no aid from the court (Equity). But we can go no further. If, as illustrated by the Chancellor (Harper), he had taken another bond with a surety instead of the mortgage, this alteration of the original bond would not prevent his recovery at law on that which had been taken as collateral security, and this court (Equity) would not interfere but on payment of the amount really due." Besides, *Gillett* v. *Powell* is generally regarded in and out of the State, as a leading case, and is cited as one in which "the bond was fraudulently altered and made void." See *Herman on Mortgages*, section 293 and note. If, as argued, the alteration in that case was not fraudulent, for the reason that it "worked no injury to the maker," the same assuredly may be said in this case.

The judgment of the court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McIVER. Yielding to the authority of *Plyler* v. *Elliott*, I concur.