No. 32,488

THE NATIONAL BANK OF TOPEKA, *Appellee*, v. H. H. DAVIES, *Appellant*.

(56 P. 2d 82)

Opinion filed April 11, 1936.

*Richard A. Swallow*, of Valley Falls, for the appellant.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery* and *M. F. Cosgrove*, all of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a replevin action for an automobile and a promissory note and a chattel mortgage securing same. Judgment was for plaintiff. Defendant appeals.

Defendant bought an automobile from Berryman Motors, Inc., on July 7, 1934. He gave in payment therefor his old car and a note for $250 secured by a mortgage on the car he had bought. When he signed this note it had written on it the words "optional renewal." When the motor company took the note to plaintiff bank to sell it, the bank refused to buy it with the above words on it because they made it nonnegotiable. The motor company sent the salesman back to defendant with another note to sign. He did sign it. Out of that note this action arises.

When the motor company offered the new note to the plaintiff it was noticed there was no insurance on the car. An employee of the bank called defendant and told him that the bank had bought the note. Here there is a dispute in the evidence. Defendant testified

that he refused to take out insurance on the car but that he knew the bank held the note. The bank employee testified that he told defendant the bank was buying the note and he raised no objection, and that he said he would take out an insurance policy on the car right away. At any rate, the bank bought the note on July 8, 1934, due on January 7, 1935. Sometime in December, 1934, the bank notified defendant that his note would fall due January 7. In reply to this notice defendant wrote the bank a letter acknowledging receipt of this notice and stating, among other things, the following:

"I am willing to pay the full face value of the note and interest, less $30 that I have been damaged by the violation of this new-car service contract. Please let me hear from you."

On the witness stand defendant admitted he signed this letter but he said he did not know it contained the statement about the interest. On January 2, 1935, plaintiff answered this letter by stating that it would collect the full amount of the note with interest on its due date. On January 7, 1935, defendant appeared at the bank and gave his check on a bank at Valley Falls for the amount of the note with interest from date. Thereupon plaintiff released the mortgage, paid defendant a sufficient sum to cover the fee for recording the release and delivered the note to appellant. On January 9, 1935, defendant stopped payment on the check. Defendant testified that he stopped payment on this check because he had, on January 8, 1935, noticed several alterations on the note which he thought canceled it as an obligation for him to pay and also canceled the mortgage. On January 16, 1935, plaintiff brought this action to replevin the note, the mortgage and the automobile, and to recover judgment for $262.37.

The defendant answered setting out several particulars in which the note had been altered. In the first place he alleged that when he signed the note that in the upper right hand corner it read "Topeka, Kansas, ———— 193—" but that when the note was returned to him it read in the upper right hand corner, "Topeka, Kansas, July 7, 1934." He next alleged that at the time he signed the note it read as to place of payment "at the office of the Interstate Securities Company in Kansas City, Missouri," but that when the note was returned to him it read as to place of payment "at the office of the National Bank of Topeka." Defendant further alleged that when he signed the note it read "with interest from maturity until paid" but that when the note was returned to him, "with interest from date

until paid." The answer further alleged that the words "Note draws interest at 8% from July 7, 1934" were added to the note and that the words "Valley Falls, Kans.," were added beneath his signature, all after he signed the note, and that he did not assent to or authorize any of these alterations. Plaintiff for reply to this answer pleaded a general denial.

The case was submitted to a jury, which returned a verdict in favor of plaintiff of $261.88. The jury also returned answers to special questions as follows:

"1. Did the second note provide for payment of interest from date when the defendant signed it? A. No.

"2. Did the plaintiff, its officers or agents, change the place of payment in the note under a belief it had a right to do so and without fraudulent intent to injure the defendant? A. Yes.

"3. Do you find the plaintiff to be a holder in due course of the note sued upon herein? A. Yes."

At the close of plaintiff's evidence defendant demurred to it. This demurrer was overruled. At the close of the case defendant also filed a motion for judgment on the answers to the special questions notwithstanding the general verdict. This motion was denied. He also filed a motion for a new trial, which was denied. He then filed a motion to reduce the verdict to correspond to the answers to special questions. This motion was sustained by eliminating the interest, and judgment was entered for $251.65 and foreclosing the mortgage on the automobile. From that judgment this appeal is taken.

The first argument of defendant is that the trial court erred in denying his motion for judgment on the special findings notwithstanding the general verdict. In this argument defendant points out first the fact that plaintiff admitted making the change on the note as to the place of payment and that the jury found in answer to special question number 1 that the note did not provide for payment of interest from date when the defendant signed it. He argues that the first alteration above was a material one and that the plaintiff admitted making it and therefore it could not claim to be a holder in due course so as not to suffer on account of the second alteration, which was a fraudulent one, since the effect was to cause defendant to be bound to pay more than he agreed to pay. In order to maintain this position defendant must needs establish that the circumstances surrounding a material alteration cannot be examined by the

courts. To do this he depends on the provisions of R. S. 52-906. That section reads as follows:

"Where a negotiable instrument is materially altered, without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration and subsequent endorsers; but when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof, according to its original tenor."

Also, R. S. 52-907. That section provides as follows:

"Any alteration which changes: (1) The date; (2) the sum payable, either for principal or interest; (3) the time or place of payment; (4) the number or the relations of the parties; (5) the medium or currency in which payment is to be made, or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

Defendant then points out that he neither made, authorized nor assented to the change in the place of payment of this note—hence the alteration renders it void. He further argues that once the plaintiff admitted making a material alteration in the note that it was prevented from becoming a holder in due course.

Plaintiff meets this argument by maintaining that the change in the place of payment was made by plaintiff under the belief that it had a right to do so and without any fraudulent intent to injure the defendant. Here plaintiff relies on the rule laid down in *Edington v. McLeod*, 87 Kan. 426, 124 Pac. 163. In 2 C. J. 1181 the rule is stated as follows:

". . . an alteration of the instrument without any fraudulent intention as a general rule, avoids the instrument only, and the promisee may still recover upon the original indebtedness, as where the alteration was innocently made under a mistaken belief of right and for the purpose of making the writing conform to the real intention of the parties. This principle is applied to make a mortgage available, although the note which it secures has been destroyed by an alteration, . . ."

To the same effect is the rule stated in 1 R. C. L. 1007.

The trial court submitted the case to the jury on proper instructions as to whether the defendant had consented to the change in the place of payment. It is true that defendant denied that he consented to the change in the place of payment. Outside, however, of his statement to that effect the testimony the bank offered and all the circumstances tend to establish that defendant did consent to the change. In addition to this, there is no evidence at all in the

record that this change was fraudulent or was calculated to do the defendant any harm. We must hold, therefore, that plaintiff in this case was the holder in due course of the note in question.

We turn now to the charge that the note was altered by changing the time when interest should start from "maturity" to "date." Such a change as this would be fraudulent because the effect of it would be to cause the maker of the note to pay more than he agreed to pay. Here the jury found in effect that this alteration was made after defendant signed it. It did not find nor was it asked the specific question as to who did make the alteration. By its general verdict, however, and by its finding that plaintiff was a holder in due course, it found in effect that the alteration had been made when the note was offered to the bank. Here plaintiff calls our attention to the provision of R. S. 52-906 that when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment of it according to its original tenor. That is what the plaintiff sought to do in this action and that is what the court held it could do. There are some other questions argued by defendant but they are all settled by what has been said here.

The judgment of the trial court is affirmed.